The plaintiff seeks to recover from the defendant the sum of $1,250, with legal interest thereon from judicial demand, and in addition thereto, asks that the defendant be required to give an accounting of the receipts and disbursements of a photograph business operated by them under a joint agreement by which they were to operate said business in the City of Lafayette from October 1, 1938 to December 31, 1939.
The petition alleges that on October 1, 1938, plaintiff and defendant entered into an agreement by which the plaintiff was to work in the photo shop owned by defendant and receive a salary of $25 per week, and in addition thereto, the said plaintiff was to receive twenty five per cent of the net profits of the business to be paid at the end of December and at the end of June of each year. This percentage of the profits was to be based on the first $1,000 of profits per year, and in case the profits exceeded that amount for any one year, the percentage was to be increased in a certain proportion as outlined in the contract. This agreement began on October 1, 1938, and was to continue until December 31, 1939. It is alleged by plaintiff that he performed his duties under said contract in defendant's studio as an expert photographer in a satisfactory manner and without any complaint from defendant until January 14, 1939, at which time the defendant destroyed certain pictures which had been developed and finished by him; that plaintiff remonstrated with the defendant for destroying said pictures without stating his reason for so doing and without pointing out any complaint on account of the work done by him; that on returning to work the following Monday, January 16, the defendant advised plaintiff that he would have to leave the studio and turn over the keys to him, but plaintiff refused to leave because of the contract which he had with defendant and which gave him an interest in the business of the studio. It is further alleged that on plaintiff's refusal to leave, the defendant called the police, whereupon in order to avoid any trouble, the plaintiff left the studio. He alleges that his discharge was without cause and seeks to recover his salary from the date of his alleged discharge to December 31, 1939, a period of fifty weeks at $25 per week, and asks for an accounting of the profits accruing during the term of the contract.
In the alternative, and in case the court should hold that the contract was a partnership between them and not a contract of employment, then plaintiff asks for an accounting of the partnership in order to establish his rights thereunder.
The defendant admits the contract and its terms, as set out in the petition, and further admits that he destroyed certain pictures which were developed and finished by plaintiff and admits that there was a controversy between him and plaintiff on January 14, 1939, but alleges that said controversy was provoked and brought on entirely by plaintiff; that after *Page 212 
said controversy, the plaintiff stated that he was quitting his employment and left the studio; that defendant assented to the dissolution of the agreement, and denies that plaintiff ever returned to resume his employment under the contract; that plaintiff returned to the studio on January 16, and began a renewal of the controversy and acted in such a manner as to harass and humiliate defendant in his place of business and in the presence of his customers. The defendant denied that he violated the terms of the contract, and in case the court should find that plaintiff did not voluntarily quit his employment and dissolve the contract, he alleges that plaintiff was guilty of insubordination, neglect and disregard of his duties, making it necessary for defendant to discharge him as of January 14, 1939, up to which time he was paid in full and nothing further is due him under the contract.
The trial court rendered a judgment in favor of the defendant rejecting the plaintiff's demands, and from this judgment the plaintiff has appealed.
The parties to this suit now concede that the relation existing between them under the contract was that of employee on the part of plaintiff and employer on the part of defendant. There are two principal questions presented for decision; viz. did the plaintiff voluntarily quit his employment thereby dissolving the agreement by mutual consent, and if not, did the defendant have sufficient cause to discharge the plaintiff and thereby terminate the contract of employment before the end of the term? It is conceded that plaintiff had been paid his wages up to January 14, 1939, the date on which he quit or was discharged, and, of course, if he quit on that date or was justifiably discharged, he is not entitled to recover his salary or wages for the remaining fifty weeks of the term. If there were any profits earned by the business up to that date, he would be entitled to his percentage of these profits.
It is admitted by both parties that they had a rather heated argument on Saturday night, January 14, 1939, in which both of them used rather rough language, the dispute ending just short of physical combat. Plaintiff came back to the studio the following Monday morning and the controversy was renewed. Defendant then demanded that plaintiff surrender the keys and leave the studio, but the latter refused to leave, claiming that he had an interest in the place under the contract. An officer was called and he induced plaintiff to leave and seek legal advice as to his rights. Without going into details on this part of the testimony, we think it shows that there was no voluntary quitting by the plaintiff or dissolution of the agreement by mutual consent between the parties, and the important question to decide is whether or not, under the facts and circumstances of the case, the defendant had sufficient cause to discharge the plaintiff.
While there are some allegations in the answer and some testimony in the record going to show that the plaintiff arrived at the studio late in the morning and did not attend to his duties promptly and faithfully on all occasions, yet the defendant admits that he made no complaint about these various derelictions of duty on the part of plaintiff but, on the contrary, he admits that plaintiff is a good photographer and he found no fault with the manner in which he discharged his duties up to the time of the occurrence of the incident that gave rise to the controversy above mentioned.
It appears that the day previous to the controversy on January 14th, plaintiff had printed several photographs in the studio and when he was at lunch, the defendant, looking over these prints, was not satisfied with the work and threw the prints in the waste basket. When plaintiff returned to the studio, he found the pictures missing but made no comment about the matter at the time. That night while he was in the studio at work, he saw the discarded prints in the waste basket. He still made no remonstrance to defendant about the occurrence, but on the following night, after all the customers had left the studio, some reference was made to one of the discarded pictures and thereupon the exchange of words began.
There is some difference in the details of the controversy as given by the plaintiff and as given by the defendant. It is clear from the testimony of both that plaintiff let defendant know in no uncertain terms that he was highly offended because of defendant's act in destroying the pictures which he had developed, and told defendant that he had better not do it again. To this threat, the defendant replied that the studio belonged to him and he would destroy any pictures that he thought were *Page 213 
not up to standard no matter who made them, whether he made them himself or whether they were made by plaintiff. On being asked what he was going to do about it, the plaintiff told defendant "if you ever tear up another of my prints you had better eat more beans than I think you have". While this bandying of words was going on, according to the testimony of the defendant, the plaintiff shook his clinched fist in defendant's face in a threatening manner.
Plaintiff returned to the studio Monday morning, and according to defendant, demanded in a rather threatening and insulting tone of voice that he be paid off. Further words followed and defendant finally called the police with the result already stated.
It was incumbent on plaintiff to show that he was discharged before the end of the term of employment without any serious cause of complaint in order for him to recover his salary and percentage of the profits for the remainder of the term. Civ. Code, art. 2749. The record clearly shows that the attitude and conduct of the plaintiff on January 14th and 16th was belligerent and provocative. He made open threats as to what he would do if defendant again discarded his work without first pointing out to him the defects in it. No doubt, it would have been better policy and more considerate on the part of defendant to have pointed out to plaintiff what he considered the faults in the prints before discarding them, yet the fact remains that the defendant owned the studio and he had the first and primary responsibility of seeing that the quality of work turned out by his shop was kept up to a certain standard.
These occurrences rendered it impossible for these two parties to conduct together in a satisfactory and successful manner the business of a studio where a considerable degree of skill and taste is required, and where there must not only be a great deal of mutual trust and confidence maintained between the parties themselves, but their relationship as seen by the public with whom they deal should manifest harmony and agreement. See Railey v. Lanahan Son, 34 La.Ann. 426. We agree with the trial judge that, under the facts and circumstances shown by the record, the defendant had a right to discharge plaintiff and terminate the contract of employment.
The defendant had an audit made of the business showing its operations from October 1st to December 31, 1938. This audit was made by a reputable accountant and shows a loss during that period. While some effort is made by the plaintiff to show that this audit is not correct, yet no audit was made by the plaintiff to prove the incorrectness of this audit, notwithstanding the books were available to plaintiff at all times, and the defendant offered to let plaintiff select his own auditor. There is nothing to show any profits of the business up to the time plaintiff was discharged on January 14, 1939, and as he was paid up to that date, defendant owes him nothing more.
For the reasons assigned, the judgment appealed from is hereby affirmed at the cost of appellant in both courts. *Page 337