286 So.2d 185 (1973)
Laura LEE
v.
Kathryn BLACKWELL d/b/a the Grog Bar.
No. 5898.
Court of Appeal of Louisiana, Fourth Circuit.
November 30, 1973.
Evangeline M. Vavrick, New Orleans, for plaintiff-appellant.
Reed, Reed & Reed, Floyd J. Reed, New Orleans, for defendants-appellees.
Before GULOTTA and STOULIG, JJ., and BAILES, J. Pro Tem.
*186 GULOTTA, Judge.
This is a suit against an employer by an employee entertainer for loss of wages and damages as a result of the alleged breach of contract by the employer. The trial judge dismissed plaintiff's action. Plaintiff appeals. We affirm.
Plaintiff, Laura Lee, was employed as a pianist in the Grog Bar, a business establishment owned and operated by defendant, Kathryn Blackwell. A written employment contract was executed between the parties which provided that plaintiff was to perform at the Grog Bar for three months, commencing on August 27, 1971, and ending on November 27, 1971. Plaintiff was to work four days a week for four hours a day and was to receive $200.00 per week for her performances. After working for approximately three weeks, defendant terminated plaintiff's employment. Plaintiff instituted this action alleging that the contract had been breached by defendant and that plaintiff was entitled to full wages through November 27, 1971, as well as any damages resulting from the breach.
As a preliminary matter, our attention is directed to Article 8[1] of the contract, which provides that the parties will submit to arbitration every claim or dispute arising out of the contract. Plaintiff did not seek arbitration in this matter, nor has defendant interposed any exception or objection to the submission of this case to the court without prior resort to arbitration. Under these circumstances, it is clear that both parties have waived their contractual right to arbitration, and that this matter is properly before the court. Quinn Construction Co. v. Savoie, 207 So.2d 229 (La.App.4th Cir. 1968); Lawton v. Cain, 172 So.2d 734 (La.App.2nd Cir. 1964).
This matter resolves itself into a factual dispute as to whether or not plaintiff acceded to the supervision, direction, and control that Article 7 of the contract reserved to the employer-defendant.
Article 7 of the contract provides:
"The Employer shall at all times have complete supervision, direction and control over the services of musicians on this engagement and expressly reserves the right to control the manner, means and details of the performance of services by the musicians including the leader as well as the ends to be accomplished. If any musicians have not been chosen upon the signing of this contract, the leader shall, as agent for the Employer and under his instructions, hire such persons and any replacements as are required."
It is defendant's contention that pursuant to this provision of the contract she gave plaintiff the following instructions: (1) to curtail her consumption of alcohol while performing, (2) to increase her repertoire of tunes, (3) to discontinue her singing and to only play the piano, (4) to be more respectful to the patrons of the Grog Bar. Defendant further contends that according to the terms of the contract, the employer has the complete supervision, direction and control over the services of the musician and has the right to control the "manner, means, and details of the performance." According to defendant, the plaintiff completely refused to comply with these instructions, and her dismissal was, therefore, justified.
On the other hand, plaintiff contends that she was terminated without notice and without lawful cause. She specifically disputes all of the complaints raised by the employer.
*187 It is clear, from a reading of the pertinent provisions of the contract, that the employer has the right to control consumption of alcoholic beverages by her employee, the nature and extent of the entertainment, and the conduct of the employees toward the patrons of the establishment. The dispute, then, is a factual one.
Although the trial judge did not render written reasons for judgment, the record reflects that he fully understood that Article 7 was the focal point of the case and that in dismissing the suit, he resolved the factual issues against plaintiff. At one point in the trial he remarked:
"As I see it the only issue in this case revolves around whether or not Article 7 of the contract comes into play and what I am interested in is what if anything Miss Blackwell told plaintiff about how to run her show and what did plaintiff do in response to that advice if any was given."
One of defendant's primary complaints against plaintiff's entertainment was that she sang while playing the piano. Plaintiff's singing, according to the employer, was irritating to the patrons. Richard Horodecky, who was a bartender at the Grog Bar, stated that defendant had instructed plaintiff to discontinue her singing, but that plaintiff did not comply. Jerry Benson (also a bartender), Lou Wilson (defendant's roommate) and Carmelita Nass (an employee of defendant) all corroborated Horodecky's testimony. The testimony of these individuals made it clear that although plaintiff played the piano well, defendant wanted her to stop singing because the patrons did not enjoy it.
Another concern of defendant was that plaintiff drank excessively. Defendant testified that she allowed plaintiff to have three drinks during each performance, but that plaintiff's consumption of alcoholic beverages exceeded that amount. Nass testified that she had relayed a message from defendant that plaintiff should curtail her drinking activity. Nass stated that defendant wanted her to talk to plaintiff because Nass was a close friend and would possibly have more success than defendant had had. Despite this, Nass stated that plaintiff continued to drink heavily. Horodecky also stated that plaintiff had fifteen to twenty drinks per performance. Joseph Caruso, an employee of defendant, in his testimony, supported Nass and Horodecky concerning the plaintiff's drinking habits. The record clearly substantiated defendant's concern in this respect.
The employer also complained that Laura Lee did not have a satisfactory repertoire. Defendant stated that plaintiff played show tunes from the 20's, 30's and 40's which did not appeal to her younger patrons; nonetheless, the employee refused to practice or rehearse to learn new songs. Horodecky testified that plaintiff did not have an adequate variety of songs, nor did she rehearse. Lou Wilson stated that plaintiff was asked, with no apparent success, by defendant to enlarge her repertoire.
Defendant finally claims that plaintiff treated the customers of the Grog Bar with disrespect in that she refused to play unless there was absolute silence. Benson, Caruso, and Wilson testified that plaintiff would not sing if the customers talked. On occasion she would tell the patrons to be quiet, or she would simply quit playing until they stopped talking. They testified that this attitude was not appreciated by the patrons and that some were so angered by plaintiff's actions that they refused to patronize the Grog Bar. Lynn Harwood (a frequent patron) stated that she herself was called down by plaintiff when she, Harwood, engaged in conversation while plaintiff was entertaining.
To counter this testimony, plaintiff testified that defendant had never asked her not to sing, that she had never told patrons to stop talking while she played, and that she did not drink excessively while working. She further stated that the only instruction given her by defendant was to *188 not play any opera music, an instruction with which she fully complied. This testimony was corroborated by Louis Brooks, who had been a patron of the Grog Bar.
As pointed out, the trial judge resolved the factual dispute against the plaintiff. In this, we find no error.
We are clearly convinced, from our review of the evidence, that the record supports the factual conclusions reached by the trial judge. Accordingly, we affirm.
Affirmed.
NOTES
[1] Article 8 provides in pertinent part:

"* * * the parties will submit every claim, dispute, controversy, or difference involving the musical services arising out of or connected with this contract and engagement covered thereby for determination by the International Executive Board of the Federation or a similar board of an appropriate local thereof, and such determination shall be conclusive, final, and binding upon the parties."