323 So.2d 163 (1975)
H. B. "Bud" FLETCHER
v.
Carol RACHOU, d/b/a La Louisianne Records and Recording Studio.
No. 5252.
Court of Appeal of Louisiana, Third Circuit.
November 20, 1975.
Rehearing Denied December 17, 1975.
*164 J. Minos Simon, Lafayette, for plaintiff-appellant-appellee.
Bean & Rush by Warren D. Rush, Lafayette, for defendant-appellee-appellant.
Before MILLER and WATSON, JJ., and CUTRER, J. ad hoc.
WATSON, Judge.
This suit involves disputes between a recording artist and the owner of a recording studio. H. B. "Bud" Fletcher, the plaintiff and defendant-in-reconvention is an entertainer specializing in the telling of jokes and stories in "Cajun"[1] dialect. The defendant and plaintiff-in-reconvention is Carol Rachou who does business as La Louisianne Records and Recording Studio. At issue was Rachau's failure to make payment of royalties and Fletcher's failure to make additional recordings. The trial judge held that Rachou owed Fletcher $2,286.50 and Rachou had no valid claims against Fletcher.
Fletcher has appealed, claiming that the amount due is considerably in excess of the award; and Rachou has appealed, contending that the trial court erred in rendering a money judgment in favor of Fletcher and in failing to award damages to Rachou.
Prior to December 9, 1967, Fletcher made several recordings for Rachou which the latter sold successfully. The exact financial arrangement concerning these recordings is unclear from the record. On December 9, 1967, the parties entered into a written contract[2] for a five-year term which provided basically: that Fletcher would record exclusively for Rachou; that recordings would be made at "mutually agreeable times"; that a royalty of 5% of the retail price (which amounted to 25 cents per album) would be paid; and that payment would be made semi-annually within 45 days after June 30 and within 45 days after December 31 of each year, subject to a deduction for all advances against royalties.
Significantly the recording contract did not call for the recordation of any particular number of records per year or during the term of the contract. There is no reference in the contract to royalties payable for prior recordings. The contract provides that, in the event of Fletcher's death, the royalties will thereafter be payable to his wife.
Pursuant to this contract, Fletcher made only one record despite attempts by Rachou and his employees to encourage additional recording. Certain recording dates *165 were set up, but Fletcher contacted the studio on each occasion and indicated that, for some reason, usually sore throat, he would be unable to record. In an effort to encourage Fletcher to make additional records, Rachou withheld payment of royalties earned by Fletcher, but on one or two occasions gave him a check for royalties with an understanding that a new record would be made shortly thereafter.
It is undisputed that, during the contract period, Fletcher did not make recordings for anyone else and that, as of the date of trial he had, to a large extent, retired from his activities as a "Cajun" humorist.
The contract between the parties expired on December 2, 1972, and, on December 6, 1973, Fletcher filed a petition alleging the existence of the contract, contending that no royalties had been paid since September 9, 1970 and that he was due an accounting and payment of all royalties. The petition was thereafter amended to claim the precise sum of $4,132.25. At no point in his petition or his amended petition did plaintiff assert a precise claim for royalties due under any prior contract on the several other records which he had made for Rachou prior to the December 9, 1967, contract.
Defendant Rachou answered, denying plaintiff's claims and asserting a reconventional demand for $10,000. He claimed loss of expenses and profits from Fletcher's failure to make recordings during the contract period, as the result of which Rachou lost the sale of those records and enhancement of the value of Fletcher's other records.
There is a certain lack of collision on the issues by the parties to this lawsuit, one side arguing certain issues and the other side arguing different and sometimes unrelated issues. However, following the propounding and answering of extensive written interrogatories, as well as other pre-trial activities, the matter was tried on the merits and the trial court found essentially that:
1. the parties did not contract to make any particular number of records;
2. defendant failed to make timely payment of royalties;
3. defendant admitted that he owed plaintiff $2,286.50 and such sum was due and owing;
4. defendant was not entitled to recover on the reconventional demand for alleged loss of profits, and even if he were so entitled, the proof was not sufficiently clear to arrive at any amount due; and
5. the claim for out of pocket expenses was not corroborated in the evidence and could not be allowed.
Following judgment by the trial court, Fletcher applied for a new trial, contending that: according to answers to the interrogatories propounded to Rachou, Rachou admitted selling 18,529 records and, under the contract,[3] Fletcher was entitled to 25 cents each or the sum of $4,632.25, less the payment of $500. Additionally, Fletcher contended that Rachou admitted the sale of another 6,456 records which would entitle him to additional royalties of $1,614.00 or a total of $5,746.25. In the motion for new trial, Fletcher also contended that the payment of royalties is a continuing obligation as long as Rachou sells the recordings and that he was entitled to an order for a continuing accounting by Rachou.
The motion for new trial was denied on the basis that the contract provided that all recordings were property of Rachou and royalties were due Fletcher only while the contract was in force. New trial was denied.
On appeal, Fletcher emphasizes the alleged error of the trial court in failing to *166 hold that the royalties were continuing rather than limited to the five-year term of the contract. Rachou contends that the court erred in ordering payment of royalties to Fletcher, who, according to Rachou, either breached the contract or failed to perform under it, thereby entitling Rachou to have the contract dissolved and also entitling him to recover damages.
The issues to be decided on appeal are:
1. whether the trial court erred in awarding Fletcher $2,286.50 as past due royalties;
2. whether the trial court erred in failing to recognize that the payment of royalties is a continuing obligation; and
3. whether Rachou is entitled to:
(a) release from his obligation to pay royalties because of breach or non-performance of the contract by Fletcher, and
(b) payment of damages.
I. Royalties
The trial court was correct in awarding the amount of $2,286.50 as past due royalties. Rachou concedes that this was the royalty only on the one record made under the contract. Fletcher persists in claiming royalties on all recordings made for Rachou, but this suit, as delineated by the petition and amending petition, is basically a demand for royalties due under the five-year contract of December 9, 1967, under which only one record was made. As to the prior records made by Fletcher for Rachou, the sale of which was alluded to in various interrogatories and answers to interrogatories, the trial court was not furnished any evidence concerning the agreement between the parties as to the amount of royalty, if any, payable on these records. The contract of December 9, 1967, did not relate to or refer to previous sales of records.
In his testimony, Rachou admitted owing Fletcher the amount awarded by the trial court, and under the circumstances, we find no error in this award.
We do not agree with the trial court, however, that the obligation to pay royalties terminated at the conclusion of the five-year contract. Certainly, since the contract did not relate to the several other records made by Fletcher for Rachou, it could have no effect on any obligation for payment of royalty under other agreements.
As to the single record made under the contract, Rachou contends apparently that the five-year contract itself provides that royalties would be payable only for five years. However, there is no such provision in the contract and no legal authority has been cited for Rachou's contention. The five-year term relates to Fletcher's obligation to make records exclusively for Rachou. Fletcher contracted only that any records he made during the five years would be made for Rachou. The obligation to pay royalties on any record made under the contract continues. The contract even provides for payment of royalties to Fletcher's wife after his death.
Breach of Contract
This brings us to Rachou's contention that Fletcher breached the contract and deprived him of profits. There is no evidence that Fletcher made recordings for any other person or firm during the contract period; the only indication of other professional activity by Fletcher was the testimony by the witnesses, Faulk, Fontenot, Stoma and Olivier, that Fletcher had made personal appearances at a bowling conference and Evangeline Downs Race Track and had made commercials for a dairy. (The contract related only to making records; see footnote 2). There was evidence by other witnesses, Leroy LeBlanc (professionally known as "Happy Fats") and B. C. Fletcher (Fletcher's brother), that, during the contract period, Fletcher suffered considerable difficulties with his throat.
*167 Rachou's contention is that Fletcher breached the contract to record by only making one record in five years and that this relieved Rachou of the obligation of paying royalties and also entitled him to payment of damages. This argument presupposes the validity and enforceability of the contract between Fletcher and Rachou. It assumes that Rachou could have affirmatively required Fletcher to make recordings. The argument fails for two reasons: first, under its terms the contract calls for no particular number of records to be made; and second, a contract for personal services is not affirmatively enforceable.
As to the first reason, the contract is clear; no particular number of records was required. As to the second reason, some consideration must be given to the basic nature of the contract. It was an agreement by an artist or performer to render personal services, akin to the contract of a singer to sing or a musician to play.
Under the law of contracts in our sister states, a contract for personal services by an artist or a performer will not be specifically enforced by an affirmative decree.[4] Reinstatement of the Law of Contracts, § 379. According to the recognized authority in the field of contracts, Professor A. L. Corbin, there are three reasons usually given for this rule of law:
(1) difficulty of enforcing the decree and gauging the quality of the performance;
(2) strength of the American prejudice against any kind of involuntary personal servitude; and
(3) frequent close association between employer and employee and the consequent undesirability of enforcement where confidence and loyalty have been disrupted by dispute.
See Corbin on Contracts, § 1204, pp. 400-401.
In Louisiana, the courts have recognized the abrogation of personal contracts by inability to perform. Most notable are the cases in which persons have contracted for a prolonged series of dancing lessons and later have become physically incapacitated to dance. Louisiana courts have held that, under these circumstances, particularly relying on LSA-C.C. art. 2003[5], such contracts are unenforceable. Acosta v. Cole, 178 So.2d 456 (La.App. 1 Cir. 1965), writ refused, 248 La. 432, 433, 179 So.2d 273, 274; Richardson v. Cole, 173 So.2d 336 (La.App. 2 Cir. 1965).
We think the reasoning expressed in Richardson and Acosta, as well as the considerations mentioned by Professor Corbin (which we find equally persuasive in Louisiana) justify our adopting and following the rule of law that a contract for personal services is not specifically enforceable by affirmative decree.
Also, the inability to perform as found in Richardson and Acosta, would, in our opinion, be an adequate basis on which the trial court could have found that Fletcher was not physically able to make additional recordings during the record period.
It does not follow, however, that, because Fletcher could not be required to perform or make additional records, royalties for records recorded during the contract period were not payable. The royalties *168 are payment for services already performed, not, as Rachou seemingly believed, dependent on future recordings.
Therefore, we find that the trial court was correct in its conclusion that there was no breach of the contract on the part of Fletcher and, accordingly, Rachou was not entitled to any damages. Likewise, the trial court was correct in holding that there was not sufficient evidence to award Rachou out of pocket expenses resulting from the cancellation of recording dates by Fletcher.
For the reasons assigned, the judgment of the trial court is affirmed, but it is amended to reserve to Fletcher the right to claim any additional royalties due: (1) on the one record made under the contract of December 9, 1967, but accruing subsequent to the five-year term of the contract, and (2) on recordings made under any agreement other than the contract of December 9, 1967.
Cost of the appeal will be divided equally between the parties.
Amended and affirmed.
NOTES
[1] "Cajun" is a contraction of the word "Acadian" used in reference to persons of Acadian descent, many of whom live in the southern part of the State of Louisiana.
[2] While the wording of the contract is not at issue, for ease of reference we will quote the first four paragraphs:

"1. This contract for your personal services is made between Carol J. Rachou D/B/A La Louisianne Records as the employer and you. We hereby employ to you render personal services and you agree to render such personal services exclusively for us for the purpose of recording and making records for phonograph records and/or tape recordings and other similar devices for home use.
"2. Recordings will be made at recording sessions in the studios we designate at mutually agreeable times. Compositions to be recorded shall be designated by La Louisianne Records and each recording shall be subject to our approval as satisfactory for manufacture and sale. We shall at all times have complete control of the services to be rendered by you under the specifications of this contract and you agree that your services are unique, exceptional, and extra-ordinary.
"3. For the rights herein granted and for the services to be rendered hereunder by you, we shall pay you a royalty of 5% of the retail price of all LP albums and tape cartridges (25¢ per album for albums that retail for $4.79), manufactured and sold by us and paid for by purchaser.
"4. Payment of accrued royalties accompanied by statements shall be made semiannually, within 45 days after June 30, and within 45 days after December 31, in each year. However, we shall have the right to deduct from the amount of royalties due all advances against royalties." (TR. 48)
[3] The contract does not refer to records made prior to its term; the contention made in the motion for new trial was incorrect.
[4] A clear distinction should be made between the enforcement of a contract by an affirmative order to perform and the negative enforcement by preventing performance of similar services for another. Other considerations are involved in negative enforcement and that is not the question here because there is no assertion of recordings made by Fletcher for anyone else.
[5] The portion of art. 2003 relied on is as follows:

"* * * if the obligation be purely personal as to the obligee who dies before performance, his heirs may recover from the obligor the value of any equivalent he may have received."
Total disability has been analogized to death in the dancing cases and the disabled dancing student has been held to be entitled to recover the unearned portion of payment for lessons.