347 So.2d 1232 (1977)
Dorita Lackey FLORENCE et al.
v.
CLINIQUE LABORATORIES, INC., et al.
No. 11340.
Court of Appeal of Louisiana, First Circuit.
June 13, 1977.
*1233 Felix R. Weill, Baton Rouge, of counsel for plaintiffs-appellees Dorita Lackey Florence, et al.
H. Evans Scobee, Baton Rouge, of counsel for defendants-appellants Clinique Laboratories, Inc. and Commercial Union Ins. Co.
O'Neal Walsh, Baton Rouge, for D. H. Holmes and Aetna.
Before LANDRY, EDWARDS and COLE, JJ.
COLE, Judge.
This action was initiated by the plaintiffs-appellees, Mrs. Dorita Florence and Charles Florence, against a manufacturer of cosmetics, Clinique Laboratories, Inc. (Clinique), and the seller thereof, D. H. Holmes, Ltd. (Holmes). Also made defendants in the suit were Clinique's insurer, Commercial Union Insurance Company (Commercial), and Holmes' insurer, Aetna Casualty and Surety Company (Aetna).
*1234 The trial court rendered judgment against all defendants, in solido, and awarded Mrs. Florence $5,000 in general damages and Mr. Florence $84.51 in special damages. Clinique and Commercial appeal the judgment of the trial court denying liability.
Holmes and Aetna did not perfect an appeal from the judgment rendered against them in favor of the plaintiffs. Holmes and Aetna merely "answered" the appeal filed by Clinique and Commercial.
Louisiana Code of Civil Procedure Article 2133 provides:
"An appellee shall not be obliged to answer the appeal unless he desires to have the judgment modified, revised, or reversed in part or unless he demands damages against the appellant. In such cases, he must file an answer to the appeal, stating the relief demanded, not later than fifteen days after the return day or the lodging of the record whichever is later. The answer filed by the appellee shall be equivalent to an appeal on his part from any portion of the judgment rendered against him in favor of the appellant and of which he complains in his answer. Additionally, however, an appellee may by answer to the appeal, demand modification, revision, or reversal of the judgment insofar as it did not allow or consider relief prayed for by an incidental action filed in the trial court. If an appellee files such an answer, all other parties to the incidental demand may file similar answers within fifteen days of the appellee's action."
In discussing this provision, the Supreme Court in Shelton v. Aetna Casualty & Surety Company, 334 So.2d 406 (La.1976), has said:
"The article does provide that by answering an appeal, an appellee, without filing an appeal on his own behalf, may seek relief from any portion of the judgment rendered against him in favor of the appellant. It does not, however, give to an answer the effect of an appeal with respect to any portion of the judgment rendered against him in favor of a party not an appellant. [Citations omitted]" (334 So.2d at 411)
The answer filed by Holmes and Aetna does not constitute an appeal of the judgment rendered against them in favor of the plaintiffs, who are not appellants herein. Therefore, the judgment of the trial court as it pertains to Holmes and Aetna is final.
On September 6, 1974, at the suggestion of a neighbor, Mrs. Florence, a 32-year-old woman, went to D. H. Holmes with the purpose of purchasing Clinique cosmetics. She was waited on at the cosmetics counter by Joan Goodwin, who represented herself to the plaintiff as a "Clinique cosmetic consultant." The plaintiff told Ms. Goodwin that she had "sensitive skin." Based on Ms. Goodwin's analysis of the plaintiff's skin "type," Ms. Goodwin recommended that the plaintiff purchase certain Clinique cosmetics and outlined in writing on the back of a Clinique Directory a "program" of cosmetics use for the plaintiff to follow.
Mrs. Florence purchased the suggested products and began the "program" as suggested by Ms. Goodwin. She returned on September 24, 1974, to purchase additional products. After using the Clinique products about two months, the plaintiff's skin "broke out." The break-out at this time was characterized by the plaintiff as "gradual" and "mild." Because of the disturbing development of having facial blemishes, the plaintiff went back to the store on November 14, 1974. On this occasion Ms. Goodwin was not in the store, and she was attended by Kathy Tate, who also represented herself to be a Clinique consultant. Ms. Tate told the plaintiff that she had been programmed wrong initially and reprogrammed her on different products. The plaintiff purchased the necessary additional products and began to follow this new "program."
Subsequent to the November visit to Holmes, Mrs. Florence's face became much worse and the eruptions became "huge." According to the plaintiff, the use of the Clinique "Exfoliating Lotion" in full strength as recommended by Ms. Tate in November, as opposed to one-half strength *1235 as recommended by Ms. Goodwin, "burned" her face. This violent and unsightly flare-up in her facial skin condition occurred about one week before a planned holiday trip to Texas to visit friends, family and former classmates. Consequently, the plaintiff became depressed and embarrassed about her appearance during the trip.
Since the lotion began causing a burning sensation, the plaintiff discontinued use of the Clinique products for the two-week period of time while on the trip. When she returned, her face was better, but it was still "broken out" and "blotchy." According to Mrs. Florence, on December 30 she took the products back to Holmes with the intention of returning them and told Ms. Goodwin she had a reaction to them and needed a dermatologist.
The plaintiff claims that when she went to Holmes on December 30 Ms. Goodwin said that Ms. Tate had advised her incorrectly and recommended returning to the original program of Clinique cosmetic use. Also, Mrs. Florence said Ms. Goodwin discouraged her from seeing a dermatologist. Pursuant to Ms. Goodwin's urgings, Mrs. Florence continued to use the Clinique products for several more months, but she continued to have problems with her skin. Finally, in March, 1975, Mrs. Florence discontinued using the products and in April, 1975, she visited a dermatologist, Dr. Judith Patrick, who successfully treated the plaintiff.
According to the plaintiff, prior to using the Clinique cosmetics, she had a relatively unblemished complexion. However, she admitted having experienced some difficulty with blackheads for about the previous five years. This problem with blackheads prompted the use of Clinique. The plaintiff was aware that she had sensitive skin because she had previously developed rashes or flaky skin while using other cosmetics. The plaintiff claims she did not discontinue use of the Clinique products (as she had done with other products which gave her difficulty) because she was assured by the Clinique representatives that she could not possibly be allergic to the Clinique and that its continued use would eventually improve her condition. She claims she was told by Ms. Goodwin that her skin "would get worse before it got better." Mrs. Florence alleges that the following residual effects are the result of her skin problems: bumps under the skin, discoloration, pitted scars and enlarged pores.
Dr. Judith Patrick, who treated the plaintiff in April, was able to successfully clear up the eruptions with antibiotics and discontinued cosmetics use. Dr. Patrick diagnosed the plaintiff's condition as an "acne flare-up" caused by the Clinique use. Dr. Patrick stated that the plaintiff had acne-prone skin which was aggravated by the application of creams or make-up applied to the skin. She stated that the exfoliating lotion might cause irritation when applied to skin eruptions but that the exfoliating lotion would not cause the skin problems. Dr. Patrick stated that the plaintiff's problem was not contact dermatitis or allergy and, therefore, that the hypoallergenicity of the products had nothing to do with the acne problem. Dr. Patrick refused to express an opinion as to the probability that the residual effects which she characterized as "very minimal" pitting were caused by the acne problems which resulted from the use of the Clinique products.
Dr. Martin L. Bell, a cosmetic surgeon and not a dermatologist, was consulted by the plaintiff on November 12, 1975. His conclusion that the plaintiff's condition was a contact allergy was based entirely on the patient's history as recited by the plaintiff. Dr. Bell stated that Dr. Patrick would be in a better position to diagnose the plaintiff's problem because she treated her during the acute phase.
We agree with the holding of the trial court that the Clinique products were not defective and, therefore, Clinique is not strictly liable for the harm resulting from the use thereof. See Weber v. Fidelity & Casualty Insurance Company of New York, 259 La. 599, 250 So.2d 754 (1971); Rhodes v. Max Factor, Inc., 264 So.2d 263 (La.App. 4th Cir. 1972).
*1236 However, the trial court found that the Clinique literature and the salespersons made representations that Clinique's product were allergy tested and hypoallergenic, which representations it found constituted an actionable warranty pursuant to Louisiana Civil Code Article 2547. However, it is clear from Dr. Patrick's testimony that the plaintiff did not have an allergic reaction to the Clinique product. Thus, there is no showing that the warranty as construed by the trial court was breached.
Also, any statements made by the salespersons or by the Clinique literature to the effect that the Clinique products were "the future of beauty" or that they were "just the products for you [plaintiff]" do not constitute material declarations giving rise to actionable warranties within the meaning of Article 2547. These statements are merely in the nature of a sales pitch arising in the ordinary course of merchandising, the purpose and effect of which a reasonable person should be knowledgeable.
After a careful reading of the trial court's written reasons for judgment, we conclude that the trial court deemed the fundamental basis of liability of the defendants to be the negligent conduct of the salespersons with whom the plaintiff dealt, for as the trial court states:
"The most important point, however, is that the agents of Clinique and Holmes; who were paid by and trained by both defendants, were negligent in their continuous representations of the product after it was apparent that it was causing problems for Mrs. Florence."
The salespersons represented themselves to the plaintiff as experts in the area of cosmetics. By "typing" her skin and, in effect, "prescribing" the use and application of certain cosmetics, they erroneously led plaintiff to believe they possessed certain expertise which they did not have. When the plaintiff experienced problems with her skin as a result of the use of the Clinique products, Ms. Tate and Ms. Goodwin, on November 14, 1974, and December 30, 1974, respectively, attempted to adjust the use of the products to prevent Mrs. Florence from discontinuing the use of them. By Ms. Goodwin's assertions that the plaintiff's skin might get worse before it got better and her advice against seeing a dermatologist, she prolonged the plaintiff's use of the products and her skin condition. The plaintiff's continued use of the products resulted because of her reliance upon the apparent expertise asserted by the salespersons by whom she was advised.
It is clear to this Court that both Ms. Goodwin and Ms. Tate were negligent in representing themselves as having certain expertise which they did not possess, in giving advice of a medical nature which they were unqualified to give, and in encouraging the use of the products by Mrs. Florence after the acne flare-up. These acts of negligence caused or contributed to the continuation of Mrs. Florence's skin difficulties. The trial judge apparently found that this conduct on the part of the salespersons was also the cause of the residual facial imperfections sustained by Mrs. Florence which, though minimal, apparently causes her much concern. Even though Dr. Patrick would not express an opinion as to the cause of these residual blemishes, there is sufficient evidence in the record from which the trial judge could have reasonably reached this conclusion, and the proper allocation of trial and appellate functions requires that we not disturb this factual finding in the absence of manifest error. Canter v. Koehring Company, 283 So.2d 716 (La.1973).
In order for Clinique to be liable vicariously for the negligent conduct of the salespersons, a master-servant relationship must exist, rather than merely an agency relationship. La.-C.C. art. 2320; Blanchard v. Ogima, 253 La. 34, 215 So.2d 902 (1968).
The essential feature in establishing an employer's vicarious liability is the right of control over the time and physical activities of the party and the existence of a close relationship between the parties. A servant is a particular type of agent who has a very close relationship to the master and who is subject to the master's control. *1237 Blanchard v. Ogima, supra; Traders & General Insurance Company v. Robison, 289 So.2d 178 (La.App. 1st Cir. 1973).
While Ms. Goodwin and Ms. Tate were paid a commission by Clinique and received sales training by Clinique, it is clear that they were the employees of Holmes and not of Clinique. Holmes exercised the right of control of the time and physical activities of these salespersons. Clinique, on the other hand, exercised little or no control over their time, physical activities or conduct in effecting the sale of the cosmetic products. Therefore, it must be concluded that the salespersons were not the servants of Clinique, thus relieving Clinique from liability for their negligent conduct.
For the foregoing reasons, the judgment of the trial court as to appellants, Clinique Laboratories, Inc., and Commercial Union Insurance Company, is reversed, and said judgment is otherwise affirmed. The costs of these proceedings are assessed to the appellees.
REVERSED IN PART, AFFIRMED IN PART AND RENDERED.