WATSON, Judge,
dissenting:
In considering this appeal it must be constantly remembered that under consideration is a rather unique personal services contract[1] and that the fundamental cause from the employer’s point of view is that the “Four Keys” were engaged “. for the entertainment of Defendant’s patrons”. TR. 3 (plaintiff’s petition).
The primary issue is whether Guilbeaux was justified in terminating the employment of the Four Keys.
The contract of employment between Gu-ilbeaux and the Four Keys provides that the four musicians are Guilbeaux’s employees and states:
“6. The Employer shall at all times have complete supervision, direction and control over the services of musicians on this engagement and expressly reserves the right to control the manner, means and details of the performance of services by the musicians. . . ” (TR. 32).
The contract later adds:
“The leader shall, . . . carry out instructions as to selections and manner of performance.” (TR. 32).
*1066 The contract thus provides the right of direction and control by the employer, the primary test for an employment relationship. Florence v. Clinique Laboratories, Inc., 347 So.2d 1232 (La.App. 1 Cir. 1977). The question of employee status is a factual one but the trial court found that there was an employment relationship. (TR. 68). Hudson v. Allstate Insurance Company, 169 So.2d 598 (La.App. 2 Cir. 1964).
The trial court concluded that the type of music played by the Four Keys did not satisfy Guilbeaux’s customers[2] but stated that this was insufficient reason for discharge of the band.
Guilbeaux’s records show gross sales of $1583 during the week that the Four Keys played; gross sales of $2349.55 during the preceding week; and gross sales of $1610.28 during the following week. The band received $1300 a week.
Plaintiff Benham has extensive musical education and experience. Benham said his group was unable to perform “Matilda”, a locally popular song which was requested. Benham was first advised that Guilbeaux was dissatisfied by booking agent Mike Ford, who called him and said Guilbeaux was not happy with the group because business was off. Benham admitted there was a large crowd at the Polynesian Room on only one night of his week there. Guil-beaux advised Benham on August 23 that he could not afford to keep the group any longer. Benham testified that he had borrowed money to pay the other three band members for the remaining three weeks of the engagement but produced no records to substantiate this fact. Benham has no authority or mandate to act as agent to collect any sums due the other band members.
Randy Autry Tyler, a band member, testified in answers to interrogatories that not many people frequented the Polynesian Room during their week’s engagement.
Both Guilbeaux and Rusty Morine, who was employed as a barmaid, testified that the band took excessive breaks and did not play locally popular music. Ms. Morine identified a list of songs which the Four Keys were asked to learn how to play but which they failed and refused to learn or rehearse. She confirmed that regular customers left because they did not care for the music;[1] which was different from that to which they were accustomed. Guilbeaux is now out of the nightclub business and Ms. Morine is employed elsewhere.
The evidence adduced establishes without contradiction that business at the Polynesian was poor during the Four Keys’ engagement.
LSA-C.C. art. 2749 states:
“If, without any serious ground of complaint, a man should send away a laborer whose services he has hired for a certain time, before that time has expired, he shall be bound to pay to such laborer the whole of the salaries which he would have been entitled to receive, had the full term of his services arrived.”
An employee alleging wrongful discharge under this article bears the burden of proving that his discharge was without just cause. See the discussion at 23 La.L.R. 553 and Blue v. Chandler, 5 So.2d 210 (La.App. 1 Cir. 1941). The trial court erred in placing the burden of proof on defendant Guil-beaux to show cause or justification for terminating the employment agreement. Generally, unsatisfactory services which result in a monetary loss justify an employee’s discharge. Compare Southern Pacific Transport Company v. Doyal, 289 So.2d 882 (La.App. 4 Cir. 1974).
There is little doubt that a band which not only does not draw business into a lounge but drives customers away gives the owner “serious ground of complaint”. The Louisiana law on the point was stated in Georesearch, Inc. v. Morriss, 193 F.Supp. *1067 163 (D.C.La., 1961) affirmed 298 F.2d 442 (U.S. 5 Cir. 1962), to be as follows:
“. . . if a person is not achieving the results for which he was hired, whether it be due to incompetency, inefficiency or some other cause within his control, the employer may discharge him from his employ.” 193 F.Supp. 177.
We agree with this further statement by the court in Georesearch, Inc., supra:
“This rule is entirely consistent with our economic system where competition is the order of the day. If an employer must retain an employee who is inefficient and incompetent adequately to perform the job he was hired to do, the employer would be met with rising overhead expenses so burdensome as completely to stifle his economic growth and competitive ability. Such a rule would place a heavy burden on the employer to conduct a costly, time-consuming investigation on each prospective employee to ascertain his abilities and shortcomings, knowing that if his investigation proved erroneous the employee must be paid in full to the end of the term for which he was employed.” 193 F.Supp. 178.
I would conclude that defendant Guil-beaux was not required to continue the employment of George Benham and the other band members when such employment constituted a financial hardship.
I respectfully dissent.

. A personal services contract differs from an ordinary contract, for example, in that it is not affirmatively enforceable. If Benham and the other three “Keys” had walked off the job, Guilbeaux could not have forced them by legal action to play. Fletcher v. Rachou, 323 So.2d 163 (La.App. 3 Cir. 1975).

. This finding brings the instant case under the rule expressed in Lee v. Blackwell, 286 So.2d 185 (La.App. 4 Cir. 1973). The difference is only in degree.